Mary Jo O'Neill, AZ Bar #005924
Hillary K. Valderrama, TX Bar #24075201
Mark J. Sorokin, AZ Bar #031960
William R. Hobson, AZ Bar #006887
**Equal Employment Opportunity**
**Commission, Phoenix District Office**
3300 N. Central Ave., Suite 690
Telephone: (602) 640-5049
Fax: (602) 640-5009
Email:  mary.oneill@eeoc.gov
        hillary.valderrama@eeoc.gov
        mark.sorokin@eeoc.gov
        william.hobson@eeoc.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | ) ) ) Civil Action No.: |
| Plaintiff, | ) **COMPLAINT** |
| vs. | ) ) **(JURY DEMAND)** |
| The Geo Group, Inc., | ) ) |
| Defendant. | ) ) ) ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the

Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex

and retaliation and to provide appropriate relief to Roberta Jones. As alleged with greater

particularity in the paragraphs below, Defendant The Geo Group, Inc. ("Geo Group" or

the "Employer") subjected Jones to discrimination based on sex, including a hostile

work environment, throughout her employment. Moreover, after Jones was dismissed

from pending litigation by EEOC and the Arizona Civil Rights Division ("ACRD")

against Defendant, Defendant harassed Jones, subjected her to coercive investigations, disciplined her, placed her on administrative leave without pay, and finally terminated her in retaliation for engaging in protected activity. Defendant also initiated contact with Jones' subsequent employer and gratuitously provided an unjustifiably negative reference regarding her prior employment with Geo Group.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     At all relevant times, Defendant, Geo Group, has been headquartered in the State of Florida and the City of Boca Raton, Florida, and has continuously been doing business in the State of Arizona and the City of Florence, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, Roberta Jones filed a charge with the Commission alleging violations of Title VII by Geo Group.

7.      The EEOC provided Geo Group with notice of the charge of discrimination.

8.      On December 11, 2014, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.      The Commission engaged in communications with Defendant Employer to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10.      The Commission was unable to secure from Defendant Employer a conciliation agreement acceptable to the Commission.

11.      On June 12, 2015, the Commission issued to Defendant Employer a Notice of Failure of Conciliation.

12.      All conditions precedent to the institution of this lawsuit have been fulfilled.

# STATEMENT OF CLAIMS

### Count I: Hostile Work Environment
### [Sex Discrimination – 42 U.S.C. § 2000e-2(a)]

13.     The allegations in the foregoing paragraphs are hereby incorporated by reference.

14.     Since at least on or about June 2007, Defendant Employer has engaged in unlawful employment practices at its Central Arizona Correctional Facility ("CACF") in Florence, Arizona, in violation of Sections 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) by allowing its employees and managers to sexually harass Roberta Jones.

15.     Defendant's employees, including but not limited to male managers responsible for supervising correctional officers, subjected Jones to a hostile work environment based on her sex when it subjected her to repeated, numerous, instances of unwelcome sexual conduct and comments including, but not limited to, the following:

a.      Sergeants ("Sgts.") Molina and Jared Yoyokie and Correctional Officer ("CO") Velasquez frequently stood around bragging about their sexual exploits and which female COs they were having sex with, if they were good in bed, and if they would go out with them again;

b.      Sgt. Gregory Souza put his hand on Jones' back, stated that she was the girl he wanted to marry, told her she smelled good.

c.      Souza also told Jones that he "enjoyed the head-shot he was getting from CO Garcia," which Jones interpreted as a reference to fellatio or oral sex, and Souza went on to say that he didn't know whether he'd enjoy it anymore now

that Garcia had recently gotten braces;

d.      Lieutenant ("Lt.") Luis Beltran constantly invited Jones to participate in social activities outside of their work hours (including but not limited to parties at his house, bars, and/or dates) and asked her for hugs. Lt. Beltran often hugged Jones before she had a chance to respond and then would hold on to her for a long time, causing her extreme discomfort.

e.      Jones heard that Lt. Beltran was placing bets on how long it would be after Jones gave birth before Lt. Beltran would have sex with her and she confronted Beltran about it. In response, Lt. Beltran assigned Jones to isolated, less desirable posts.

f.      Jones heard CO Matthew Scott say that women were only good for being on their knees and having kids.

g.      Sgt. Jeffrey Perry frequently talked about his "type of woman," what he liked to see them wearing, and how he liked to smell them. Sgt. Perry also talked about how he liked to have sex in the morning so he could stick his hand down his pants and smell the sex throughout the day, and Perry regularly referred to his penis as "Little Jeffie."

h.      A supervisor, Rick Lewis, uttered numerous sexual comments toward Jones and made veiled sexual advances, innuendos, and gestures toward Jones.

i.      Lt. Sanchez stalked Jones and followed her home from work. After Jones' husband confronted Sanchez, Sanchez began assigning Jones to less

desirable posts so that he could always watch her.

16.    The unwelcome sexual conduct and comments, including but not limited to those described in the aforegoing paragraphs, were sufficiently severe and/or pervasive as to alter the terms and conditions of Jones' employment with the Geo Group.

17.    This harassment (including but not limited to harassment from supervisory and management level employees, such as sergeants and lieutenants) was done in such an open and notorious manner that Geo Group knew or should have known that Jones was being subjected to a hostile work environment because of sex.

18.    Geo Group did not adequately respond to stop the harassment to which Jones was subjected.

19.    Jones complained about the harassment she experienced to Defendant multiple times, including but not limited to by writing approximately three incident reports and twice calling Defendant's 1-800 complaint number.

20.    Defendant took no remedial action to correct the conduct described in the paragraphs above and failed to investigate Jones' complaints.

21.    The unlawful employment practices complained of in the aforementioned paragraphs were intentional.

22.    The unlawful employment practices complained of in the aforementioned paragraphs above were done with malice or with reckless indifference to the federally protected rights of Roberta Jones.

**Count II: Retaliation**
**[Retaliation – 42 U.S.C. § 2000e-3(a)]**

23.     The allegations in the foregoing paragraphs are hereby incorporated by reference.

24.     Since at least April 19, 2012, Defendant has engaged in unlawful employment practices at CACF in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3 by retaliating against Jones for her participation in protected activity.

25.     In late 2010, Jones complained to Geo that she was being subjected to a sexually hostile work environment.

26.     On or about June 2011, Jones again complained to Geo that she was being subjected to a sexually hostile work environment.

27.     After Jones complained in June 2011, Geo assigned her to less desirable posts.

28.     Geo did not investigate either of Jones' complaints in 2010 or 2011.

29.     On or about February 29, 2012, EEOC and the Arizona Civil Rights Division ("ACRD") identified Jones as an aggrieved individual in their lawsuit against Defendant, State of Arizona ex rel. Goddard v. The Geo Group, Case No. CV-10-1995-PHX-SRB.

30.     After EEOC and ACRD identified Jones, Geo began assigning her to repetitive, isolating, and less desirable posts.

31.     Geo allowed COs who were not class members to rotate posts, but did not allow class members, including Roberta Jones, to rotate posts.

32.     On April 17, 2012, the Court dismissed the claims made by EEOC and ACRD on behalf of Jones.

33.     On April 18, 2012, staff from Geo's headquarters in Florida arrived at CACF in Florence, Arizona.

34.     On April 19, 2012, Jones was relieved of her post and told to report to the administrative office.

35.     When Jones reported to the administrative office, she observed that the office personnel stopped their activities and began whispering and staring at her.

36.     Warden John Gay barely acknowledged Jones' presence that day, though he had her sit in his office for a half an hour and wait.

37.     After approximately a half an hour, Jones was summoned to speak with a woman she did not know.

38.     Although the woman did not immediately identify herself, the interviewer was Priscilla Miles, an investigator from Geo Group's headquarters.

39.     Miles questioned Jones about the sexual harassment she had experienced at Geo Group and threatened Jones with discipline and possible termination if Jones did not answer her questions.

40.     At some point during the interview, Miles informed Jones that Miles was an investigator from Geo Group's corporate headquarters and insisted that Jones sign a confidentiality agreement regarding the interrogation.

41.     At the end of the interview, Miles presented Jones with Miles' summary of the interview, which consisted of selective portions of Jones' answers and misrepresented Jones' testimony by excluding relevant information Jones had provided.

42.     Miles told Jones to write down her statement based on Miles' summary

and directed Jones to only write down "yes" or "no," again excluding relevant information that Jones had given her.

43.     Miles then forced Jones to sign her manufactured statement and a confidentiality agreement, and did not allow Jones to retain a copy of either statement.

44.     Despite Jones' repeated requests, Miles refused to provide Jones with a copy of the confidentiality agreement or the written statement she required Jones to sign.

45.     On or about April 18 and 19, 2012, Defendant only interrogated those employees who had been identified as class members and/or witnesses in the lawsuit and who had been dismissed from the EEOC and ACRD's suit just days before.

46.     Prior to Jones' participation in EEOC's and ACRD's previous lawsuit against Defendant, Jones had never been counseled or disciplined for absenteeism.

47.     On or about May 2, 2012, approximately two weeks after Jones was dismissed from EEOC's lawsuit, Defendant issued Jones a written disciplinary action for alleged "chronic absenteeism".

48.     However, Jones had followed Defendant's policies and procedures in obtaining prior permission for the absences for which Defendant disciplined her.

49.     Geo Group ordinarily did not discipline correctional officers for taking preapproved absences.

50.     Defendant's policies in effect at all relevant times dictated that employees receive progressive discipline and generally receive counseling prior to a written disciplinary action.

51.     When Defendant issued Jones a written disciplinary action on or about

May 2, 2012, Defendant had never issued counseling to Jones.

52.    Jones filed a charge of discrimination with the ACRD on November 16, 2012.

53.    On November 26, 2012, Geo received a copy of Jones' November 16, 2012 charge.

54.    On November 30, 2012, Jones was called into Deputy Warden William Massengill's office for a meeting with Massengill and Linda Ash, Defendant's human resources representative.

55.    In this meeting, Ash told Jones that there were two complaints against her: (1) that she did not permit a coworker, CO Mathey, to perform his health and welfare checks, and (2) that she did not clear the scanner upon arriving at work on November 23, 2012, but still proceeded to her post.

56.    However, employees cannot proceed to their posts without clearing the scanner and in fact cannot even gain access to the building without first clearing the scanner.

57.    On or about December 5, 2012, Defendant placed Jones on administrative leave for allegedly falsifying records when, on an unspecified date, she recorded that her male coworker, CO Espinoza, had completed a health and welfare check.

58.    CO Espinoza had not completed his health and welfare check, but had told Jones that he did.

59.    CO Espinoza was not disciplined for his failure to perform health and welfare checks or for causing Jones to report that he had done so on Geo Group's

-10-

records.

60.    Defendant kept Jones on administrative leave until approximately January 23, 2013, when Defendant fired her.

61.    After Defendant fired her, Jones gained employment elsewhere.

62.    Defendant provided an unsolicited and unjustifiably negative reference to Jones' new employer.

63.    The effect of the practices complained of in the foregoing paragraphs above has been to deprive Roberta Jones of equal employment opportunities and otherwise adversely affect her status as an employee because of her participation in EEOC's and ACRD's lawsuit against Defendant Employer and because of her opposition to unlawful employment practices (including but not limited to the filing of her November 16, 2012 charge of discrimination).

64.    The unlawful employment practices complained of in the aforementioned paragraphs were intentional.

65.    The unlawful employment practices complained of in the aforementioned paragraphs above were done with malice or with reckless indifference to the federally protected rights of Roberta Jones.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant Geo Group, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in sexual harassment against its female

employees and from engaging in retaliation against its employees for their participation in protected activity.

B.      Order Defendant Geo Group to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant Geo Group to make whole Roberta Jones, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Roberta Jones' employment.

D.      Order Defendant Geo Group to make whole Roberta Jones by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the aforementioned paragraphs above, in amounts to be determined at trial.

E.      Order Defendant Geo Group to make whole Roberta Jones by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the aforementioned paragraphs, including but not limited to emotional pain, suffering, inconvenience, and humiliation, in amounts to be determined at trial.

F.      Order Defendant Geo Group to pay Roberta Jones punitive damages for its malicious and reckless conduct, as described in the aforementioned paragraphs above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED this 23rd day of September, 2015.

P. DAVID LOPEZ
General Counsel

GWENDOLYN REAMS
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street NE, 5th Floor
Washington, DC 20507-0004

MARY JO O'NEILL
Regional Attorney

HILLARY K. VALDERRAMA
Supervisory Trial Attorney

*/s/ Mark J. Sorokin*
MARK J. SOROKIN
Trial Attorney

WILLIAM R. HOBSON
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Ave, Suite 690
Phoenix, AZ 85012

-13-